IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DM MANUFACTURING BELOIT, LLC,

                        Plaintiff,                          OPINION AND ORDER

    v.

                                                  20-cv-272-wmc

ENVIRODYNE SYSTEMS INC.,

                        Defendant.

---

       This case arises from plaintiff DM Manufacturing Beloit, LLC's efforts to collect payment for its performance of a 2018 contract to provide wastewater treatment systems to defendant Envirodyne Systems Inc.  At some point, Envirodyne refused to pay because of alleged defects in the wastewater treatment systems and prompted it to file a lawsuit in Pennsylvania state court for DM Manufacturing's alleged breach of contract as well as related claims.  Some two and a half months later, DM Manufacturing also filed this action in the Circuit Court for Rock County, Wisconsin, which Envirodyne removed to this court on diversity grounds.[1]  Plaintiff asserts claims for breach of contract, unjust enrichment, quantum meruit, conversion, and statutory theft under Wis. Stat. § 943.20(1)(a) (2017-18).

       Before the court is defendant Envirodyne's motion to dismiss or stay this suit, and allow its Pennsylvania case to proceed pursuant to the *Colorado River* abstention doctrine.

---

[1] Envirodyne removed this case from Rock County Circuit Court under 28 U.S.C. §§ 1332, 1441, and 1446.  (Not. of Removal (dkt #1) ¶ 1.)  Moreover, subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) appears to be satisfied, since complete diversity between the parties exists, as plaintiff DM Manufacturing is a citizen of Wisconsin and defendant Envirodyne is a citizen of Delaware and Pennsylvania, and the amount in controversy exceeds $75,000. (*Id.* ¶¶ 6-7, 9.)

For the reasons explained below, that motion will be granted, and the court will stay this case pending resolution of the Pennsylvania state court action.

BACKGROUND[2]

**A. Parties' Business History and Relationship**

Envirodyne is a designer and seller of unique water and wastewater treatment equipment who contracted with DM Manufacturing for the fabrication and manufacture of its wastewater treatment systems.  On or about October 27, 2017, Envirodyne began its relationship with DM Manufacturing after it allegedly acquired the assets of another corporation, "DMI," with whom Envirodyne enjoyed a longstanding business relationship contracting for the production, assembly and maintenance of wastewater equipment and systems.  For the next year, DM Manufacturing assumed responsibility for and continued the maintenance of that pre-existing relationship.

On or about October 30, 2018, DM Manufacturing also entered various agreements with Envirodyne for the manufacture and/or fabrication of equipment at DM Manufacturing's facility in Beloit, Rock County, Wisconsin.  More specifically, DM Manufacturing agreed to provide Envirodyne with six primary and four secondary "clarifiers" for the Duck Island Wastewater Treatment Facility in Lowell, Massachusetts. These clarifiers were to be fit for installation and finish-painted, at which time a third party

---

[2] The following background facts are derived from the undisputed representations of the parties in this lawsuit, as well as in filings in the Pennsylvania case.  *See Lumen Const. Inc. v. Brant Const. Co.*, 780 F.2d 691, 697 n.4 (7th Cir. 1985) (In deciding a motion to abstain, "the official record of the parallel case is proper object for judicial notice.").  In particular, the court has reviewed the Pennsylvania state court filings available as exhibits to the Declaration of Robert E. Sheker.  (Sheker Decl., Exs. A-D (dkt. ##10-1, 10-2, 10-3, 10-4).)

would do the physical installation.  The Bill of Materials ("BOM") for this transaction included $447,291.46 for the four secondary clarifiers and $387,554.30 for the six primary clarifiers.  The BOM described specific finishing touches that Envirodyne required, and DM Manufacturing allegedly confirmed its acceptance of those requirements with signatures on the purchase orders.

### B.  The State Court Action

As noted previously, the Pennsylvania state court action arose out of DM Manufacturing's allegedly inadequate performance of the Lowell, Massachusetts contract.  *See Envirodyne Sys. v. DM Manufacturing, Inc.*, No. 2019-12868 (Cumberland Cnty. Pa. Ct. of Common Pleas Dec. 6, 2019).  Specifically, Envirodyne observed that the paint on the units bubbled and peeled following arrival at the Lowell plant.  Envirodyne then undertook mitigating efforts by notifying DM Manufacturing of the problem, retaining its own local painters to make repairs, urging DM Manufacturing to monitor that its units were properly painted and keeping DM Manufacturing apprised of the costs incurred in those repairs.  Despite repeated notifications, DM Manufacturing failed to remedy the problem with its paint.

On September 30, 2019, Envirodyne further sought a completion schedule for the remaining clarifiers due under the 2018 agreements, as well as confirmation that DM Manufacturing had resumed work and would be following the contract terms with respect to specifications, payment terms and the latest schedule.  Upon allegedly being told by DM Manufacturing that it did *not* intend to satisfy the 2018 agreement, Envirodyne terminated them on October 1, 2019.  Following this termination, DM Manufacturing

allegedly ceased performance on eight other, unrelated contracts.  In response, Envirodyne terminated those contracts as well.  Since these interactions, DM Manufacturing has also allegedly retained possession of Envirodyne's property, including bearings, wheels/shafts, UHMW/Teflon and rubber items delivered to DM Manufacturing and intended for use at the Lowell, Massachusetts Wastewater Treatment Facility.

On December 6, 2019, Envirodyne brought suit against DM Manufacturing and numerous other defendants in Pennsylvania state court for Cumberland County, asserting the following six claims:  breach of contract, breach of implied warranty of fitness for a particular purpose, negligence, conversion, trespass to chattels, and violations of the Pennsylvania Uniform Trade Secrets Act.  The December complaint has since been amended three times, most recently on April 3, 2020.  Counts I and II of the operative complaint appear to address breach in connection with the equipment for the Massachusetts wastewater project, and Counts III, IV, and V appear to address claims in connection with equipment DM Manufacturing is withholding from Envirodyne.[3] (Def.'s Prelim. Obj. to Third Amended Compl. (dkt. #14-1) ¶ 8.)

### C.  The Present Lawsuit

On February 25, 2020, DM Manufacturing also brought suit against Envirodyne in the Circuit Court for Rock County, Wisconsin, alleging breach of contract, unjust enrichment, quantum meruit, conversion, and statutory theft under Wis. Stat.

---

[3] In the Pennsylvania action, DM Manufacturing challenged that court's basis for personal jurisdiction, but as Envirodyne pointed out in a supplemental declaration, the Pennsylvania court rejected this challenge.  (Bovender Decl., Exs. A, B (dkt. ##18-1, 18-2).)

§ 943.20(1)(a).  Envirodyne removed the suit to this court on March 27, 2020.  The claims at issue in this lawsuit are based on several purchase orders, all but one of which are implicated in the Pennsylvania state action.  The purchase orders were apparently subject to an agreement in which Envirodyne would inspect the equipment at the Beloit facility, take possession of it, and pay the invoiced amounts for labor and materials within 30 days of the invoice.  DM Manufacturing alleges that it performed and/or substantially performed the terms and conditions of the agreements and that Envirodyne failed to pay the agreed $154,608.40 for labor and materials now in its possession as required by their agreements. DM Manufacturing further alleges that the outstanding balance of the terminated agreements for ordered materials and partial fabrication undertaken amounts to an additional $348,377.46.

On April 22, 2020, Envirodyne moved this court to enter an order dismissing this case for lack of subject matter jurisdiction or, in the alternative, stay the proceedings pending the completion of the concurrent Cumberland County Court of Common Pleas litigation under the *Colorado River* doctrine.

OPINION

As noted by Envirodyne, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).  However, Envirodyne does not assert that this court lacks subject matter jurisdiction over the suit before it, nor could it.  *See* discussion,

5

*supra*, n.1.  Rather, Envirodyne argues only that under the *Colorado River* doctrine, the court should choose to stay this case during the pendency of a parallel action in Pennsylvania state court.  The doctrine promotes "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal citations omitted).  Application of the doctrine is both strict and narrow, as district courts have a "virtually unflagging obligation" to exercise federal jurisdiction where it exists.  *Id.*  For this reason, abstention is the exception, not the rule, *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2011), and "there is a presumption against abstention," meaning that "if there is any substantial doubt that the concurrent state proceeding will be an adequate vehicle for the complete and prompt resolution of the issues between the parties, a stay would be a serious abuse of discretion," *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (internal citations and quotation marks omitted).  Thus, only truly exceptional circumstances justify abstention.  *Id.* at 645 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)).

"To determine whether a stay is appropriate under the *Colorado River* doctrine, the district court must undertake a two-part inquiry."  *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006).  First, the suits must be "parallel" by showing that "substantially the same parties are contemporaneously litigating the same issues in another forum."  *Clark*, 376 F.3d at 686.  Second, "a number of non-exclusive factors that might demonstrate the existence of exceptional circumstances" must be balanced to warrant abstention.  *Id.*  The court takes up each part in turn.

6

## I.  Parallel Cases

Plaintiff argues that the parties' actions in federal and state court are not parallel because other parties and claims are involved in the Pennsylvania lawsuit.  *See Adkins v. VIM Recycling*, 644 F.3d 483, 499 (7th Cir. 2011) ("A court should examine whether the suits involve the same parties, arise out of the same facts and raise similar legal and factual issues.").  However, parties and clams need not be identical to invoke *Colorado River* abstention.  *See Tyrer*, 456 F.3d at 751.  Crucially, the court must find "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Huon*, 657 F.3d at 645 (quoting *Adkins*, 644 F.3d at 499).

Here, the similarity of the two parties in the Pennsylvania and Wisconsin suits, and their overlapping allegations raising similar legal and factual issues, are not in dispute. Indeed, plaintiff agrees that there are substantial similarities in the parties and allegations of the cases "to the point of nearly complete overlap."  (Pl.'s Opp'n (dkt. #14) 9.).  Plaintiff disputes, however, that the Pennsylvania state litigation will dispose of all claims presented in this federal case.

In response, defendant points out "questions of law and fact that need to be, and will be resolved, by the Pennsylvania action include the following: whether the agreements existed between the parties, what the alleged agreements required of each party, whether there were any issues with the wastewater equipment, and what the parties are due in damages (if any)." (Def.'s Br. (dkt. #9) 6.)  Still, plaintiff contends that its Wisconsin statutory theft claim and one contract for services to be shipped to Norridgewock, Maine,

are *not* included in the Pennsylvania suit and, therefore, will not be resolved by that state action.  (Pl.'s Opp'n (dkt. #14) 5.)

In reviewing the state court claims, the court concludes that plaintiff is mistaken on both counts.  First, with respect to the statutory theft claim, the Pennsylvania court's interpretation of the contract language for breach of contract and breach of implied warranties directly implicates the quantum meruit and unjust enrichment analysis required for plaintiff's statutory theft claim.  Moreover, plaintiff's reliance on the Wisconsin statutory theft claim to contest parallelism ignores the similar, if not identical, factual determinations necessary to resolve claims under both Wis. Stat. § 943.20 and Wisconsin common law breach of contract.  In particular, liability for Wisconsin statutory theft requires proof that the defendant:

> Intentionally takes and carries away, uses, transfers, conceals, or retains possession of moveable property of another without the other's consent and with intent to deprive the owner permanently of possession of such property.

Wis. Stat. § 943.20(1)(a).  Whether defendant did *any* of those things will turn entirely on what the parties' respective rights were under their agreements (i.e., whether defendant breached the agreement by taking, keeping and using any of the plaintiff's materials).  Accordingly, because the requisite findings for common law breach will require interpreting the responsibilities of the parties pursuant to contract language and resultant conferral of ownership, this claim will be disposed of by the state litigation.  *See Tyrer*, 456 F.3d at 752 ("[O]ne important factor is whether both cases would be resolved by examining largely the same evidence.").

Second, with respect to the DM Manufacturing's additional contract claim for the work in Norridgewock, Maine, formal symmetry of the cases is not required. *See AAR Int'l*, 250 F.3d at 518. This case can be likened to the claims in *Caminiti and Iatarola, Ltd. v. Behnke Warehousing Inc.*, 962 F.3d 698 (7th Cir. 1992), in which the court relied on the shared, "basic issue" to be decided in each court in order to determine parallelism despite differences in some of the claims. In that case, the Behnke family retained the law firm of Caminiti and Iatarola Ltd. ("C&I") to probate an estate, including preparing state and federal income and inheritance tax forms. *Id.* at 699. A dispute over the family's Behnke Warehousing Inc. ("BWI") business status for tax purposes led to C&I's eventual termination. *Id.* C&I then pursued its unpaid legal fees in the Northern District of Illinois, while the estate filed in Michigan probate court for the recovery of legal fees already paid to C&I. *Id.* at 700. The court found parallelism between the two cases despite an additional counterclaim in the Northern District of Illinois concerning whether an oral contract had been made between C&I and BWI, who was a party to the federal litigation only. *Id.* at 701. Ultimately, the Seventh Circuit held "the slight difference in the parties and issues in the federal and state cases is insufficient to destroy the parallel nature of the two proceedings in this case, as the granting of the relief BWI has requested in the probate court would dispose of all claims raised in the federal case." *Id.*

Like the claims in *Caminiti and Iatarola*, the state and federal suits in this case address the same fundamental issue: the legal obligations of each party under the contracts and disputes as to their respective performance. Once determined, the issue of damages due to each party will naturally follow. Any dispute about an additional contract between these

same two parties does not disturb the overall parallelism, at least where the contract is included among the list of invoices between them, was terminated by Envirodyne with the eight other contracts following alleged performance issues in Lowell, Massachusetts, and arises out of the same basic disagreement over completion schedules for the remaining clarifiers.  (3d Am. Compl. (dkt. #10-2) ¶¶ 58-61; Pl.'s Prelim. Obj. to 3d Am. Compl. (dkt. #14-1) ¶ 36 ("The contracts at issue in the Wisconsin Complaint, see Wisconsin Complaint at ¶ 5, are the contracts at issue in the Third Amended Complaint. See Third Amended Complaint at ¶¶ 30-31, 60.").)  Indeed, it appears inevitable that this additional Maine claim will be effectively disposed of when the terms and performance issues under the other contracts have been fully litigated.

Of course, to ensure this, plaintiff may add the Wisconsin statutory theft claim and the Norridgewock, Maine, contract as counterclaims in the Pennsylvania suit, although this is not necessary to establish the fundamental parallelism between the two lawsuits, nor can it be.  *See TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592-93 (7th Cir. 2005) (citing *AAR Int'l*, 250 F.3d at 522) ("No authority . . . suggest[s] that a federal action is parallel to a state or foreign action for *Colorado River* abstention purposes when the claim upon which the federal action is based is pleadable as a compulsory counterclaim in the other action.").  As in *Adkins*, because the same parties are litigating contract performance that substantially "arise[s] out of the same facts and raise[s] similar legal and factual issues," 644 F.3d at 499, this court finds the Pennsylvania state and federal lawsuits are parallel.

## II. Consideration of Nonexclusive Factors

Having concluded that the actions are parallel, the court must still consider whether "exceptional circumstances" exist for the court to deny its exercise of jurisdiction. While the court is not charged with making an effort *to* exercise its jurisdiction, it must be presented with convincing evidence mandating the surrender of jurisdiction. *See Huon*, 657 F.3d at 645 ("The Court has cautioned that the task of the district court is 'not to find some substantial jurisdiction, but instead to ascertain whether there exist exceptional circumstances, the clearest of justifications . . . to justify the *surrender* of that jurisdiction." (internal quotation marks and citations omitted)). "What is required is a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Tyrer*, 456 F.3d at 754-55.

In making this determination, the court considers the following nonexclusive factors:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law (state or federal); (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

*Tyrer*, 456 F.3d at 754 (internal citations omitted). "No one factor is necessarily determinative" *Colo. River*, 424 U.S. at 818, but "absent or neutral factors weigh against abstention," *Huon*, 657 F.3d at 648.

This court first turns to the order in which jurisdiction was obtained by the concurrent forums here, and the related inquiry of the relative progress of state and federal proceedings. Order of obtaining jurisdiction does not mechanically determine the proper forum for litigating, but rather "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first but rather in terms of how much progress has been made in the two actions." *Moses Coen*, 460 U.S. at 21.

The Pennsylvania state court first obtained jurisdiction by Envirodyne filing its action in December 2019, and that court confirmed its exercise of personal jurisdiction over DM Manufacturing in the Commonwealth of Pennsylvania on July 6, 2020. (Def.'s Mot. for Leave to File Suppl. Decl. (dkt. #17) ¶ 3.) Since then it has taken significant steps in the litigation, including ordering a stay on equipment located in Beloit, Wisconsin, and authorizing that discovery resume on July 7, 2020. (Prelim. Injunction Order (dkt. #10-4) ¶ 2; Bovender Decl. (dkt #18) ¶ 5.) Given the advanced progress of the state court proceedings as a result of the earlier attainment of jurisdiction, these factors weigh strongly in favor of abstention. *See DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 477 (2020) ("We can infer . . . from *Moses Cone* that the relative progress of the case in one court or another is of greater importance than some of the other considerations."); *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988). The assumption of jurisdiction over property, evidenced by issuance of a preliminary injunction by the Pennsylvania state court also favors abstention.

Relatedly, this court recognizes the likelihood of piecemeal litigation if the two suits advance concurrently.   As already discussed, the claims in each court entail highly duplicative findings of fact and law that will inevitably result in duplicative litigation. "[T]he danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Tyrer*, 456 F.3d at 756.  In light of the progress made in the Pennsylvania suit, this court's parallel exercise could undermine the legitimacy of both courts by also deciding those claims here, unnecessarily "risking duplicative rulings" and "wast[ing] the parties' resources." *Id.*; *see also Day*, 862 F.2d at 659 ("[T]he possibility of conflicting results is very present here since both state and federal cases depend on interpretation of the same contract.").  Thus, this factor also weighs in favor of abstention.

Both the source of governing law and the adequacy of state-court action to protect the federal plaintiff's rights also, at least slightly, favor abstention.   "[A] state court's expertise in applying its own laws favors a *Colorado River* stay."  *Day*, 862 F.2d at 660 (internal citation removed).  Because state law governs all claims between these suits, including the statutory civil theft claim, adequate protection of rights in the state court action is established.  *See Ingalls v. AES Corp.*, 311 Fed. Appx. 911,915 (7th Cir. 2008) (citing *Caminiti* & *Iatarola, Ltd.*, 962 F.2d at 702).  Further, because plaintiff can add the Wisconsin statutory civil theft claim (or a Pennsylvania equivalent) to the state suit, there is no merit to the argument that plaintiff's rights will not be adequately protected in state court.  That Pennsylvania court is certainly empowered to decide all of these issues and provide plaintiff with the appropriate remedy.

The inconvenience of the federal forum and the presence of concurrent jurisdiction are neutral factors in this analysis. "Because of the presumption against abstention, absent or neutral factors weigh in favor of exercising jurisdiction." *Huon*, 657 F.3d at 648. Concurrent jurisdiction is established above and is neutral. The inconvenience of a federal forum cannot be decided at this time. Envirodyne notes the Wisconsin forum will cause personal inconvenience when its principal place of business is in Camp Hill, Pennsylvania, and it does not have a physical presence in Wisconsin. (Def's Reply Br. (dkt #16) 4.) Of course, DM Manufacturing's location in Beloit, Wisconsin, and manufacturing and fabricating in this state confers equal personal convenience for the plaintiff here. The same is less likely to be true as to potential discovery. The contracts at issue involved relationships with and shipments to Norridgewock, Maine, and Lowell, Massachusetts (Pl.'s Opp'n (dkt. #14) 5; Pl.'s Pa. Court Filing (dkt. #14-1) ¶ 30), and DM Manufacturing sent a foreman to Lowell to inspect the equipment's paint; on the other hand, Envirodyne hired an inspector for the work undertaken by DM Manufacturing in Beloit. (Grafft Aff. (dkt. #1-4) ¶¶ 56, 58.) Because multiple states are implicated in these transactions, it is premature to identify where discovery will be taken, what witnesses it will entail, and what depositions or affidavits may be required, although the court cannot find that the federal forum is *more* convenient. This factor, therefore, is at most neutral.

Finally, the availability of removal of the Pennsylvania case to federal court or appropriateness of a federal forum is not discussed at length by the parties. While the time for removal has lapsed, DM Manufacturing likely *could* have removed the state court action to federal court had it chose to do so. Because federal recourse was not barred, this factor

14

is also no bar to abstention, although neither is there a basis to label this federal action vexatious or contrived.  If anything, the temporal proximity of the filings -- December 6, 2019, in Pennsylvania, and February 25, 2020, in Wisconsin -- suggests something of a "race to the courthouse."  As such, this factor is larger inapplicable as well.

Based on this analysis, a number of exceptional circumstances are present in this case justifying the court's abstention, including the desirability of avoiding piecemeal litigation, the relative progress of the state action as compared to this federal action (substantially due to the inevitable delays of removal and motion to dismiss or stay), and the fact that the state court has assumed jurisdiction over property.  On this record, therefore, the court concludes that Envirodyne has overcome the presumption against abstention.  *See Cleven v. Soglin*, No. 16-cv-421-wmc, 2017 WL 4631131 (W.D. Wis. October 13, 2017)) ("[W]here several factors strongly support abstention, it is within the district court's discretion to do so.") (citing *Tyrer*, 456 F.3d at 755).  Accordingly, this court will grant a stay, as "a stay, not a dismissal without prejudice, is the appropriate procedural mechanism for a district court to employ . . . under the *Colorado River* doctrine." *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 698 (7th Cir. 1985).  At the conclusion of the Pennsylvania state litigation, if for some reason not all claims are resolved, DM Manufacturing may seek to reopen this action and pursue that claim.

ORDER

IT IS ORDERED that:

1) Defendant's motion for leave to file supplemental declaration (dkt. #17) is GRANTED.

2) Defendant Envirodyne Systems Inc.'s motion to dismiss or stay (dkt. #8) is GRANTED IN PART AND DENIED IN PART and this case is STAYED pending resolution of the parallel state court action in Pennsylvania.

3) Defendant is instructed to keep this court apprised of developments in the state court action by filing a status update every six months.

Entered this 7th day of December, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge